COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

September 2, 2022

David J. Margules, Esquire
Elizabeth A. Sloan, Esquire
Elizabeth S. Fenton, Esquire
Jessica C. Watt, Esquire
Brittany M. Giusini, Esquire
Ballard Spahr LLP
919 N. Market Street. 11th Floor
Wilmington, DE 19801

Brad D. Sorrels, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

Edward B. Micheletti, Esquire
Lauren N. Rosenello, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
920 N. King Street, 7th Floor
P.O. Box 636
Wilmington, DE 19899-0636

Richard I. G. Jones, Jr., Esquire
Zachary J. Schnapp, Esquire
Berger Harris LLP
1105 N. Market Street, 11th Floor
Wilmington, DE 19801

Re: *Twitter, Inc. v. Elon R. Musk et al.*,
C.A. No. 2022-0613-KSJM

Dear Counsel:

This letter decision resolves the August 25, 2022 joint motion of Craft Ventures Management, LP and Sacks.com LLC to quash subpoenas directed to them and enter a protective order (the "Motion to Quash"). I have carefully studied the Motion to Quash,[1] Twitter, Inc.'s August 29, 2022 Opposition to the Motion to Quash,[2] and the movants' August 30, 2022 reply in further support of the Motion to Quash.[3]

---

[1] C.A. No. 2022-0613-KSJM, Docket ("Dkt.") 251 ("Mot. to Quash").

[2] Dkt. 270 ("Opposition").

[3] Dkt. 299.

I will keep this brief. I again assume that the readers are familiar with the background of this action. David Sacks is one of four individuals identified by Elon Musk as persons with whom he privately communicated about the Twitter transaction. Sacks's fund, Craft Ventures GP I, LLC ("Craft"), entered into a non-disclosure agreement with Musk to evaluate a potential investment in connection with Musk's acquisition of Twitter. On August 1, 2022, Twitter served a California subpoena on Sacks.

What happened next was unusual. To quote from Twitter's Opposition:

> Sacks' response was swift and obscene. That evening, he Tweeted a virtual middle-finger at "Twitter's lawyers," then a video of a man urinating on a subpoena while yelling expletives to a cheering crowd.[4]

Sacks next complained about the subpoena on *Bloomberg TV*, stating that he has "never been in possession of non-public information related to [Twitter's] contract dispute with Elon."[5] A few days later, Sacks stated on a publicly aired podcast that Twitter's subpoena was inappropriate because Sacks was "not even involved" with the transaction and was "not in possession of non-public information about this."[6] He further stated that he would respond to the subpoena by "hir[ing] a lawyer to go quash this thing."[7]

---

[4] Opposition ¶ 1.

[5] Opposition ¶ 10 (quoting *David Sacks Calls Twitter Subpoena 'Harassment,'* Bloomberg (Aug. 10, 2022), https://www.bloomberg.com/news/videos/2022-08-10/david-sacks-calls-twitter-subpoena-harassment-video).

[6] All-In Podcast, *E90: Twitter subpoenas, market overview, Pelosi's Taiwan visit & more*, YouTube (Aug. 5, 2022), https://youtu.be/jlK5tsUuEP0.

[7] Opposition ¶ 3 (quoting All-In Podcast, *E90: Twitter subpoenas, market overview, Pelosi's Taiwan visit & more*, YouTube (Aug. 5, 2022), https://youtu.be/jlK5tsUuEP0).

Craft hired California counsel, who informed Twitter on August 10 that Sacks expected to respond to the subpoena on August 17 and would "endeavor to produce documents by the August 22, 2022 response date."[8] Meanwhile, Twitter learned of the Craft non-disclosure agreement and served a second California subpoena on Craft on August 15. Sacks' California counsel agreed to accept service.

Twitter's counsel became concerned that Sacks would not comply with his obligations. On August 22, Sacks' supposed target date for document production, Twitter served Delaware subpoenas on Sacks's Delaware affiliates, which are the movants. Sacks responded that the Delaware subpoenas were unduly burdensome because they were duplicative of the California subpoenas and the return dates were too soon. To allay these concerns, Twitter made clear that it would treat Sacks's compliance with the California subpoenas as full compliance with the Delaware subpoenas and that the return dates were negotiable. Sacks's California counsel proceeded to engage cooperatively with Twitter's counsel to satisfy the California subpoenas.

Then came the Motion to Quash. In it, the movants claim that they were "cooperative" in California from the start.[9] They describe Sacks's connection to the transaction as "tenuous."[10] They describe the Delaware subpoenas as wholly duplicative. They complain that the Delaware subpoenas force them to incur the added expense of

---

[8] Mot. to Quash ¶ 1.

[9] Mot. to Quash ¶ 4.

[10] *Id.*

Delaware counsel. On these grounds, they have moved to quash, deny, and limit the Delaware subpoenas pursuant to Court of Chancery Rules 45 and 26. They have also requested fee-shifting.

Rule 45 requires a subpoenaing party to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."[11] The court protects non-parties "from significant expense resulting from the inspection and copying commanded."[12] The court will "quash or modify the subpoena" in a number of circumstance, including if the subpoena "[f]ails to allow reasonable time for compliance" or "[s]ubjects a person to undue burden."[13] Rule 26 empowers the court to deny or limit discovery that is "unreasonably cumulative or duplicative" or "obtainable from some other source that is more convenient, less burdensome, or less expensive."[14] The movants bear the burden of establishing that the Delaware subpoenas exceed Rules 45 or 26.

The movants have not met their burden here. The Delaware subpoenas were not "unreasonably" duplicative. Twitter had valid concerns based on Sacks's behavior that neither he nor Craft would comply with the California subpoenas. Rather than burden a judge in another state with a request to enforce a subpoena, or risk not getting relief in time for use in this highly expedited matter, Twitter served the Delaware subpoenas as an

---

[11] Ct. Ch. R. 45(c)(1).

[12] Ct. Ch. R. 45(c)(2)(B).

[13] Ct. Ch. R. 45(c)(3)(A).

[14] Ct. Ch. R. 26(b)(1).

insurance policy. In other circumstances, I might view entirely duplicative subpoenas served for such tactical purposes as problematic. Where, as here, the subpoena recipient Tweets the subpoenaing attorneys the middle finger and a video of someone urinating on subpoenas, I am less bothered by it.

The Delaware subpoenas impose no undue burden. Twitter made clear that it would treat compliance with the California subpoenas as full compliance with the Delaware subpoenas and that the return dates were negotiable. The only burden identified by the movants is the expense associated with hiring Delaware counsel. The movants did not need to hire Delaware counsel to comply with the Delaware subpoenas. They only needed Delaware counsel to move to quash the Delaware subpoenas. In an apparent effort to keep Sacks's promise to his podcast listeners, the movants created the very burden of which they now complain.

The Motion to Quash is denied.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:  All counsel of record (by *File & ServeXpress*)